Good morning, ladies and gentlemen. Our first case for this morning will be S.C. Johnson v. Nutraceutical Corporation. Ms. Tomczyk. Thank you, Your Honor. Good morning, Your Honors. Nutraceutical's appeal in this case does not involve the typical issue that a court sees with regard to a common law trademark case, which normally involves the establishment of the common law right and the geographic scope of that right. In this particular case, the district court correctly concluded that Nutraceutical established its common law right to use the bug-off mark on products and the geographic scope of that common law right was the nation. The question in this appeal is whether or not Nutraceutical established continuous use after S.C. Johnson registered its trademark so as to maintain the right that it had already established. The district court's conclusion of no continuous use after 2012 was legally erroneous because it applied the incorrect legal standard in determining continuous use for maintenance of a common law trademark case. Could I ask you a practical question about this? I know in your brief you rely on the testimony of the official who said, yes, we're still selling it, and it wasn't the most scientific, but he did report that. So is there an outer limit? Is Nutraceutical in any way still selling this, or is there some point at which this whole dispute just stops from lack of use? At this point, based on the record, Your Honor, no. And that's an important point because if you look at the Ninth Circuit cases, the Casual Corner and the Quicksilver case, those are really the only two cases that were cited to this court and were cited to the district court where the exact issue before Your Honors was discussed, and that is after you have established that you have a common law right and a national right to use it prior to the time of a registered trademark, the test you apply after that is not the same rigorous test. That is, if a party who now owns the right, like Nutraceutical does, shows that there is a bona fide continuous use in commerce, that is in the regular course of trade. So if Nutraceutical had sent a single shipment of Bug-Off every year to a retailer, it would continue to use the Bug-Off mark, regardless of whether a single bottle of product was sold. Yes, Your Honor, because it's not the penetration and sales test. In fact, under the Johnny Blastoff case, this court squarely held that you do not determine, and this is in an establishment context under Johnny Blastoff, that you do not determine whether or not there is a common law right based on sales. That is not the sine qua non of actually establishing the common law right. Well, there are the two tests, right, the totality of the circumstances, which Johnny Blastoff and other cases use in some circuits, and the market penetration test, right? That is correct, Your Honor, and my point in this is even under Johnny Blastoff, which is the standard in the Seventh Circuit, not the market penetration test, the court said that sales were not dispositive even to establish a common law right. So if it's not required to establish a common law right, it cannot be determinative for the lesser standard of continuation of use. The point is that under the federal statutes, under the case law, the courts and the statutes recognize the importance of a federal common law trademark right. Well, there's one thing I would like you to talk about in this. Maybe this is all related to how much of a use there needs to be. So as I understand the S.C. Johnson position, they think that there is a rather low amount of use that's necessary to show infringement, but you would have to have a higher, more substantial use to show continuous use around the country. So maybe you could discuss whether you think there are two standards for that. Absolutely, Your Honor, and I think the first thing I'd like to point out relative to S.C. Johnson's position is there is no authority, none, where any court, and particularly the Seventh Circuit, has held that you use two different standards for determining use, as the district court did in this case. Because what you're basically saying is even though we have determined you have a prior right, a prior common law right, we are now going to take that right away from you using a totally different standard than we used to show you're liable for infringement. And not only is there no authority, there's no reasonable basis or rationale for determining infringement. I know that S.C. Johnson argues, well, gosh, if you don't adopt these two different standards, somebody who has a registered mark can never prove infringement if the standard isn't less than showing continuous use to establish maintenance of a right. Well, Your Honor, there's no reason why that's wrong. Because once you establish that right, we're not talking about establishing it, we're saying we're on the same footing now as somebody who registered their mark. Because we, being nutraceutical, met the standard under the federal trademark law and the case law to establish it was the prior owner. It then became on the same footing as S.C. Johnson for purposes of ownership and use of that mark. And to take away the ownership based on a different standard is contrary to the priority and protection provided to senior common law rights trademark owners, and it doesn't serve the purpose for which you have continuation. And that is, once you establish you own it, if you continue to use it in commerce and it's bona fide, that is, you're not just using it for the purpose of maintaining your mark, but you're using it in the regular course of trade, which was established here. And I think that's what Judge Williams' question was getting at in part. Suppose the record just showed some pro forma use just to hang on to the mark or something. Would you think that there's any level of use that's de minimis, that would be insufficient to show the kind of continuous use that the law calls for? I do, Your Honor. I believe that there may be a case where you have got a factual scenario where a common law trademark owner does, in fact, not use the mark in commerce in the regular course of trade and, in fact, is using it simply to maintain the mark, which is part of the use test. You cannot do that. You can't just use it to keep it. You've got to use it in the regular course of trade. And in this particular case, the evidence, in fact, showed that NutraCeutical continued to use it in the regular course of its trade. And the only way you can take away that established right is set forth in the casual corners and the quicksilver case. And in that case, the case is expressly dealt with once you own that right. What is the level, the standard, for determining whether you've continued to use it in commerce? Okay, so maybe you could tick off what you think, what you're really relying on, the record. You're certainly relying in part on the Executive Vice President's testimony. What else? The other thing we're relying on, Your Honor, is the website. And the reason we're looking at the website is because it is uncontroverted that that website was set up in 1992 by Sandy Mitting for Sunfeather. That website isn't just a home page where somebody can go and look at the product. It is uncontroverted that it advertises products that are marked with the bug-off mark, but it does more than that. It allows people anywhere in the United States to access that mark and to purchase products with the bug-off mark. So if you look at the purpose for continuation, that is letting the public know that you are claiming to be the owner of this mark, and when they see it, they should know or should at least reasonably understand that that mark is associated with the person putting out the product. Do we care if this is like spray insect repellents or the bracelets or the spritzers or the other products like that? You know, in terms of this appeal, it doesn't matter. That was an issue that Nutraceutical raised at the trial court level, but I think for purposes of the decision this court must make, it's not a relevant issue because I think the real question is, in terms of use of this mark on an insect repellent, has Nutraceutical met the lower burden of establishing that it continued to use it without any significant interference? And again, I want to come back to the casual corner and quick silver cases, because what those courts held, and there's no contrary authority, is once you have established you own a right and you've established the geographic scope like we have here, what you have is unless you can show or there is evidence that there was a significant interruption in that use, and they define significant interruption as a total non-use for one year. And if you look at the quick silver case, the court in that case reversed a summary judgment on the grounds that there was testimony from one of the witnesses that there were continuing sales and there was no evidence of a complete non-use for a year. Let me put this a little differently. Isn't the whole purpose of trademark law to ensure the public doesn't get confused about whether a mark is associated with a particular product? I mean, that's one of the purposes. So if Bug Off is just not selling Nutraceutical for a long enough time, doesn't it simply confuse the public to let Nutraceutical maintain its rights when SC Johnson has completely penetrated the national market? The answer to that, Your Honor, is it would depend on the case, but this case is not a case where Nutraceutical has stopped using the product for any period of time. And there is no evidence in the record from which a determination of complete non-use for any significant time can be found. Where you have an interactive website on a nationwide basis that has existed since 1992 and sales have been made before it and you have the COO categorically and undisputedly testifying that since Nutraceutical acquired the mark in 2011, it has not only continued to use it, but it's continued to manufacture products with that mark and continued to sell them with that mark. Ms. Tomsek, if I may, I know time is short. In the Internet age, and you speak of the website, what relevance is the geographic area of concentration as far as market penetration? It depends on the purpose for which you're asking the question, Your Honor. If you are asking the question of establishing a common law right and the original geographic scope prior to registration, my position is that a website would not be enough for that purpose. It still isn't a market penetration test under Johnny Blastoff, but you would need to look at the rest of the information, such as the information here. Were there nationwide catalogs? Were there nationwide sales? Did they have media exposure? All the number of things that indicate not only on a sales basis, which was shown in this case, but on a totality of the circumstances, enough evidence to show that the public's mind was exposed to this mark and it was given information to show that the use of that mark on a product came from the originator of the mark, which initially was Sunfeather and then purchased by NutraSuitable. What concerns me a little bit in this case is even if there are, or let me put it this way, is it possible that there could be an interruption in the continuous use but not in a specific geographic area? Because the request here is for a permanent injunction. Yes. I'm just wondering, in this world that we're speaking of, whether or not you can, because of a lack of continuous use, still maintain your common law rights in a specific geographic area based on the evidence of where the market concentration is. The answer is if you do not continuously use the mark in commerce, in the course of trade, you cannot maintain it in a geographic area if there's been a significant interruption. So it's not an in ad finitum right. You have to keep using it, but under, once you establish it, you don't then have to go into court every time you have a registrant that comes back and says, oh gosh, now you don't have enough sales in this state. That's not the test, or the policy this court would be setting is that any time someone establishes a senior right, a common law right on a national basis and continues to sell it, the registrant can continually haul them into court if the economy goes down, if people's preferences change, but that company is continually engaged in bona fide efforts to try to market and sell that product. Well, I'm thinking about where the concentration is, let's say basically statewide, but you have an Internet site, and you really have 98% sales, for example, in an extremely concentrated area. Could there be a situation where there's an abandonment or at least no significant presence in the vast area other than because you have a website? In establishing it, the answer is yes. In terms of maintaining it, if there's evidence that there's been a complete non-use in other territories for a significant period of time, you could reach there, but that is not this case. And if I could reserve my rebuttal time? That would be fine. Ms. Schill. Good morning, and may it please the Court. Common law rights are at all times defined by the geographic scope of the actual use that is sufficient to create in the minds of the public an association between the mark and the products or services that's being used. Before we get too deeply into that, I have some questions about the way this issue of the 2012 use came up, and we can reach in a few minutes what the evidence may be of sufficiently broad use to support it. SC Johnson admitted in its summary judgment response that Nutraceutical distributes Bug-Off products online and at retail shops around the country. SC Johnson admitted that Nutraceutical sales records demonstrate continued sale of Sunfeather Bug-Off through the present, and this case was not litigated at the district court level on this issue. SC Johnson's view, which you have also returned to in this court, had much more to do with the pre-'98 actions and how all of this got established. So I'm very concerned about, first of all, waiver. I'm concerned about how your admissions correspond to the position that you're now taking because it's really quite inconsistent in my view. We opened the trial, Your Honor, with the contention and the citation to the law that required SC Johnson to prove not only a particular geographic scope of common law rights, which they contended at all times was nationwide, but also continuity of that use in that claimed area through the present. A lawyer's argument isn't the same as an admission in the summary judgment record. And by the time you admitted those things and the executive vice president testifies, yes, we're still manufacturing these things, Nutraceutical subsidiaries are manufacturing the Bug-Off repellent. I have trouble seeing this as a case where there's no evidence of use 2012 and going forward. Your Honor, the summary judgment issues... That's why you wound up with this elaborate argument. Well, they're using it enough that we can say there's infringement, but they're not using it enough to show continuous and systematic, which seemed to me awfully fine hair-splitting. Well, actually, this court in the Zazu Designs case held specifically that the use that's required to support a registration, for example, which is the merest bonafide use in commerce, which is the level of use. It appears Nutraceutical is contending is all it needs to show. But this wasn't a registration situation. This is a common law mark. Right. But this court has held that bonafide use in commerce may be enough to support a registration. It's not enough to support common law rights. But the common law rights were established long before this issue about 2012 came up, unless you're saying that unless you're making the much more ambitious argument that at no time from, you know, I guess the early 1980s or maybe 1992 when Sunfeather begins marketing this at the craft fairs, that at no time there's ever been a common law right. Is that your position? No, certainly not. But our position— So you think there is a common law right, but you get to just sort of spring this 2012 stuff on. They might have had more evidence that they would have wanted to introduce if they had known that this was at issue. But your admissions certainly suggested it wasn't. Well, Nutraceutical is a pretty large company, Your Honor, and they knew from the moment that this case started that their burden was to prove use that was not only prior but also continuous to the present. But they don't need to prove something if the other side has already admitted it, right? That is true. But, Your Honor, our statements with regard to use in commerce at all time related to whether there was a bona fide use in commerce that triggered an infringement claim. Well, you didn't say that, though. You said Nutraceutical sales records demonstrate continued sale of sunflower feather bug off through the present. That's in your summary judgment response, paragraphs 31 to 33. In the context of a national geographic scope, however, we never admitted that they used it nationwide. Okay. Why doesn't the fact of these catalogs, the Internet availability of the products, show that once they get off the ground, once they've established, since you've admitted that there was a common law trademark to begin with and the only thing we're talking about is abandonment, why isn't the Internet enough and the catalogs and the marketing of all the people who want DEET-free insect repellent? I'm not one of them, actually. I don't think it works, but anyway. That's because bugs love me. That's the problem. But anyway, why isn't there plenty here to show that there's post-2012 continuity, especially when the district court seems to think that you have to have Sales records are not dispositive. That's clear. And you agree that the district court thought they were. There was no other evidence from which the district court could have made a different finding. What about the Executive Vice President's testimony in your admission? That they're continuing to sell, but as you mentioned, Your Honor, things like catalog sales or media publications or trade show attendance, none of that happened post-2012. In fact, none of that happened post-2011 when Nutraceutical purchased the company, and the primary catalog vehicles ceased 10 years before trials started. But the products continued to be available for purchase on the Sunfeather website. Available for purchase on a passive website. There's no evidence regarding how many people even access the website. There's no evidence regarding whether it was truly interactive. So you're looking for specific sales. Well, I'm looking for evidence of actual commercial activity that makes the trademark use public enough that the public consumers can actually create an association. I just think you're just not living in the real world in terms of website use. I mean, people can get on the web, just type in, bug off, type in. I agree you don't know how many people actually did that, but I think there's a problem with calling the website passive versus active. I just wonder if that's the right nomenclature, the right way to characterize it, given how, I mean, I think it's just a changing world we're in. In the personal jurisdiction area, there was the Zippo case, but actually the passive-active distinction is pretty widely recognized as not a very good approach to these things anymore. Right, and I think that actually the presence of that, of a bug-off product on a website, absent evidence that there was sales, for example, in this jurisdiction, probably doesn't support a finding of personal jurisdiction over a nutraceutical if they were to challenge it, because that's what the cases in this circuit have found. I doubt, given the fact that the question was, since 2011 you and nutraceuticals have sold products with bug-off on the label, have you not? Answer, yes. And since the time of the lawsuit, nutraceutical has still been selling bug-off products? Answer, yes. They're manufacturing soap, they're manufacturing repellent, and they're available on the website. That's evidence. I mean, the district judge doesn't say a word about it. Well, the district court noted the testimony and found that it was not sufficient. What page are you relying on in particular? At 44, which is page 3 of the decision and order on the motion after verdict. The court, he says in the middle of the page, the court considered the admissible testimony and evidence presented at trial, including that of Jeffrey Heinrichs. But then the very next sentence is where he goes back to the sales records, and that's the problem that I have. This is the motion to reconsider that you're looking at. Yes, and he couches that. It's the sales records that he's obsessed with. In the context of proving nationwide common law rights. Well, but there were already nationwide rights, and the question is when you're selling through a website to people from, for that matter, anywhere in the world. But let's not worry about that. Anywhere in the United States, I don't know why you aren't. I mean, not everybody has a website. You don't have to have a website. But if you do have a website, you're undertaking to ship to wherever the customer is located. True, but in this case, we don't know the location of a single customer. Why do you need to know that? Because common law rights are defined by the geographic scope. So in your view, to pick up on Judge Flom's questions, you could have common law rights still in Utah, so SC Johnson can't sell any of its bug off things there, and no common law rights in Colorado, and yes, common law rights in California, and no common law rights in Texas. Is that your sense of it? Yes, in fact, courts analyze it in exactly that way. That's a market penetration test. That's not a totality of the circumstances test. Well, the totality of the circumstances is merely a way to determine whether market penetration has actually been accomplished or not. That's not what we said in Blastoff. I think it is, actually, Your Honor, because what the court was analyzing in Johnny Blastoff is whether there was a sufficient association in the minds of the public between the market issue and the products or services, and that's the same thing the market penetration analysis is supposed to determine. But you would agree, then, that you think we should just blur these two tests, that they're actually not two different tests. I think there are ways of analyzing the same issue. One may focus more on sales, but market penetration also looks at growth trends. It looks at market share, in other words, and it looks at number of sales compared to number of potential purchasers. We would have to change this circuit's law. Not that that's the end of the world, we could do that, but we would have to change this circuit's law to change from our totality approach to the things that you're talking about. I don't think they're inconsistent, Your Honor, because the totality of... But they are. Maybe the bar is higher with market penetration because you want to see how many sales are in each of the 50 states of the United States. You want to see how many ads were taken out of the media in each of the 50 states of the United States. You want to see whether California has special rules for pesticides, all kinds of things like that, and I don't think that's what has been required in the past. The totality of the circumstances test does not preclude consideration of the more hard data type of evidence. No, not at all. It just doesn't depend on it. So the evidence remains relevant, even under the totality of the circumstances test. I don't disagree with that. Of course it's relevant. So in our situation, the totality of the circumstances is a website and statements that products are sold. Because no one knew this was an issue. If you had said the issue before the district court was continuity of sales from 2012 forward, it is my prediction this case would have been tried differently. Well, the issue was framed on summary judgment as the burden of proof being un-nutraceutical to establish common law rights nationwide in scope, because that's the area they claimed, both prior and continuing. And that was cited at least twice on summary judgment, and that's consistent with the position we took at trial. So at all times in this case, nutraceutical has understood that its burden of proof is to prove common law rights that are both prior and continuous. I get that, and I guess I'm just going to go back to the fact that S.C. Johnson admitted that nutraceutical distributes bug-off products online and at retail shops around the country. So there's a geographic scope, there's a commercial activity dimension to this admission. And also you admitted that their sales records demonstrate continued sales through the present. So you may be right that that was what the issue was, but a litigant should be entitled to rely on admissions that are not withdrawn. Those admissions were in the context, Your Honor, of their claim of nationwide rights, and those are not admissions that they maintained nationwide use sufficient to maintain common law rights. But you don't say that in the admissions. Well, and the statements weren't that tailored and given the arguments that were in the briefing and the understanding that common law rights have to be proved continuously, particularly where, as here, S.C. Johnson enjoys a presumption of exclusivity throughout the country, subject only to the rights that can be proven in particular geographic areas. And here, nutraceutical is taking the position that even absent evidence of a precise geographic scope of sales, the mere ownership of a website where a product is listed, among many other products, that that's enough to maintain nationwide common law rights that can overcome and be superior to a federal trademark registration. And that's not the standard that this Court has embraced in prior cases. This Court has found that bona fide use in commerce is not enough to establish common law rights, and that while it could be for a registration, it's not for common law rights. But you agreed that they've established. I thought we agreed 10 minutes ago that this was about abandonment, not establishment. We've never taken the position, Your Honor, that nutraceutical has abandoned the barest minimum level of common law rights. We argue there's been a significant interruption. So what's the difference between, in your view, what's the difference between abandonment and the kind of lapse that you allege occurred in 2012? Well, abandonment requires an intent not to resume, or if after a three-year period of time that would be presumed. However, we believe, and we believe the evidence shows, that because common law rights have to be maintained without significant interruption, an interruption can occur without formal abandonment. And in this case, the evidence that the District Court relied upon to establish nationwide common law rights ended well before trials started. So in 2004, the Smith & Hawkin catalog promotion ends because the company goes out of business. No later than 2007, the Frontier catalog promotion ends. There's no evidence of any trade show attendance or craft fair attendance after 2008. There's no evidence of any Sunfeather catalog distribution after 2008. And certainly none of those factors existed after nutraceutical purchased Sunfeather. There's no evidence in the record whatsoever that any trade shows were attended by nutraceutical to promote its Sunfeather products, whether it's Bug Off or anything else. No catalogs, no third-party media attention, none of the other factors that play into the totality of the circumstances to maintain these nationwide common law rights. Other than the website, of course. Other than the website. I mean, a lot of companies prefer not to spend a lot of money on catalogs these days. They rely on their websites. And those same companies track their website traffic to make sure that their website usage is effective. And if it's not, they start doing email blasts, or they do social media, or they somehow amplify their Internet presence in a way that is much more proactive than merely offering a product for sale. Well, how do you respond to nutraceutical's argument that your proposed test for continuing use would put smaller companies in more niche markets at a disadvantage, particularly in times of an economic downturn? Companies have the ability to maintain their sales records at any time. And here we're talking about a failure of proof. So it's not that they're disadvantaged because Sunfeather was small. They simply didn't have the evidence of sales, and they apparently stopped going to trade shows, or at least didn't introduce any evidence of trade shows, and their catalog circulation ended. They had relied substantially on Smith & Hawkin and Frontier for their nationwide sales, and that was done a decade before trial started. But this only comes up in post-trial briefing, right? This whole issue of 2012 comes up only in post-trial briefing. At the pleading stage and at the trial, everybody's talking about pre-1998. We noted throughout the case, Your Honor, that these nationwide rights to the extent they existed at all, which we disputed vehemently, even if they existed, didn't continue through the present. Nutraceutical had every chance to present evidence of sales records. They presented them for 2011. They presented them for 2012. Excuse me. Yeah, for 2012. The fact that they didn't for 2013 or 14, we believe strongly suggests that they were even more de minimis than the previous year sales had been. I see that I'm out of time. Unless there are any other questions, I thank you for your attention. Apparently not. Thank you very much. Anything further, Ms. Tomczyk? Yes, Your Honor. I want to follow up on a point that was discussed, and that is whether or not, for purposes of what the issue that was tried before the trial court, solely focused on whether or not Nutraceutical established the right to have a common law ownership and the geographic scope of that ownership before 1998. And while counsel for S.C. Johnson wants to state that in her opening statement at court somehow the landscape changed, that just is not true. A lawyer who admits a fact in a pleading before a court has taken that issue off the table. And if you look at S.C. Johnson's response to the additional facts set forth by Nutraceutical in response to the summary judgment motion, S.C. Johnson admitted, admitted, admitted, that's a judicial admission, that Nutraceutical continue to market and sell and manufacture products with the bug off mark up to the present. That was right before trial. But more importantly, when the parties put in their pretrial statements of what are the issues we are going to try, they said that the focus, and I'm reading from what they said, is they said that the focus is whether Nutraceutical established a common law right and a geographic scope prior to 1998. And that is what got tried. The reason we have the 2011 and 2012 sales records is because those were the ones requested prior to the time S.C. Johnson filed its motion for summary judgment and admitted that it knew that Nutraceutical was So that was the issue tried. And when they try to go back and say, oh, gosh, the court shouldn't have found that they even had them from 2008 on, well, number one, they're asking this court to reverse the district court. There's no cross appeal. And second, the record shows there were sales in 49 states. I'm out of time. I ask you to reverse remand with instructions to enter a judgment in Nutraceutical's favor. Thank you, Your Honors. All right. Thanks to both counsel. We will take the case under.